# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DONG FENG, a/k/a Ken Feng, DAN
DONG, LLC, TWINS FENG, LLC, LUCAS
FENG SHI, INC., LUCAS FENG, LLC,
KENNY FENG, INC., ASIAN GAME, INC.,
NEW BROTHER PLACE, INC., and
K. FENG, LLC,

       Petitioners,

v.                                  Case No.: 3:19-mc-34-J-34MCR

UNITED STATES OF AMERICA,

       Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

**THIS CAUSE** is before the Court on Petitioners' Corrected Petition to

Quash Summonses ("Petition to Quash") (Doc. 3), the United States' Motion to

Dismiss Petition to Quash IRS Summonses ("Motion to Dismiss") (Doc. 4),

Petitioners' response in opposition thereto ("Response") (Doc. 7), and the United

States' Reply (Doc. 11).  The undersigned has reviewed the filings in this case

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

and finds that there is no need for a hearing.  For the reasons stated herein, the

undersigned recommends that the Motion to Dismiss be **GRANTED** and the

Petition to Quash be **DENIED**.

## I.     Background

On August 2, 2018, at approximately 2:00 a.m., a shooting and robbery

occurred outside Lucas Feng Shi, Inc., a game room owned by Petitioner Dong

Feng.  (Doc. 7-3 at 1.)  Later that morning, Mr. Feng encountered Bradford

County law enforcement officers, who were investigating the shooting, outside of

this establishment.  (*Id.*)  According to Mr. Feng, he went to his business around

10:00 a.m. and was standing in the parking lot with his Coach backpack when

one of the Bradford County officers approached him and demanded his

backpack.  (Doc. 7-4 at 1.)  Mr. Feng claims that the officer threatened to get a

warrant to search the backpack and claimed that he had authority to seize and

search the backpack as evidence of the shooting.  (*Id.*)  Mr. Feng claims that, as

a result of these threats, he "involuntarily signed a consent search form, which

certainly was not with [his] informed consent, was based on what [he later found

were] misrepresentations by the officer, was not voluntary, and was executed

under duress."  (*Id.*)  Mr. Feng contends that neither he nor his Coach backpack

could have been mistaken for the perpetrators or the stolen backpack involved in

the incident the previous night.  (*Id.* at 1-2.)

On October 10, 2018, Mr. Feng's former attorney, Kelly Mathis, filed a

Complaint in state court against the Sheriff of Bradford County to recover

possession of Mr. Feng's personal property, *i.e.*, his Coach backpack and its contents, which included two notebooks.[2]  (*See* Doc. 7-3 at 1-5, 9-11; *see also* Doc. 7-4 at 2.)  According to the Affidavit of Kelly Mathis, he resolved the Complaint with counsel for the County who purportedly "recognized the unlawful nature of the seizure[] and consented to the return of the property."  (Doc. 7-3 at 2.)  Mr. Mathis states that on December 26, 2018, he filed a Notice of Dismissal with Prejudice noting that the parties had settled the state court action.  (*Id.* at 3, 12.)  He also claims it was his "initial understanding that the backpack and all of its contents would be returned" to Mr. Feng, but the "Sheriff then claimed that the contents of the backpack might be necessary in connection with the investigation" of the robbery and attempted murder.  (*Id.* at 2-3.)  Mr. Mathis also claims it was his understanding that the "contents were to be returned when the investigation was complete."  (*Id.* at 3.)  Mr. Mathis claims he has been informed that the two notebooks in the backpack were not returned to Mr. Feng, which he claims violates "the settlement agreement [he] had with Bradford County."  (*Id.*)

According to the sworn declaration of Internal Revenue Service (IRS) Special Agent Jeffrey S. Brown ("SA Brown") dated January 22, 2020, on October 23, 2018, he received a tip from local law enforcement, presumably from

---

[2] The complaint alleged, *inter alia*, that Mr. Feng's property was "wrongfully detained by Defendant" and that "Defendant came into possession of the property by misrepresenting certain facts to plaintiff and allegedly confiscating said backpack based on the pretense that it constituted evidence in connection with a criminal investigation involving a shooting at [p]laintiff's business."  (Doc. 7-3 at 10.)

Bradford County, that Mr. Feng was "allegedly operating an illegal gambling business in Starke, Florida." (Doc. 4-1 at ¶ 3.) According to SA Brown, he received an email with personal identifiers for Mr. Feng, which he then processed through an IRS analytical tool used "to evaluate leads for potential criminal investigations." (*Id.*) SA Brown avers that the analytical tool identified a number of items he considered to be red flags, based on his training and experience, and "identified several financial institutions, including Bank of America, Regions Bank, and Brookline Bank, which maintained a business relationship with" Mr. Feng. (*Id.*) SA Brown also examined Mr. Feng's tax returns for tax years 2014 to 2017 and "noted that some of the individual tax returns indicated they were 'self prepared' and contained clear errors and possible fraud." (Doc. 4-1 at ¶ 4.) The tax returns "also identified a number of rental properties," which, upon review of public property records, led SA Brown to determine that Mr. Feng "purchased these properties with considerable down payments." (*Id.*) According to SA Brown, "[b]ased on the income historically claimed by Dong Feng's tax returns, these down payments appeared larger than what [he] expected." (*Id.*)

On November 15, 2018, SA Brown recommended that the IRS initiate a criminal investigation of Mr. Feng's compliance with internal revenue laws. (*Id.* at ¶ 5.) On November 20, 2018, SA Brown's supervisor approved the investigation. (*Id.*) Then, on November 28, 2018, SA Brown received two composition notebooks belonging to Mr. Feng, along with a copy of a "Voluntary Consent to Search" form signed by Mr. Feng, from Bradford County local law enforcement

4

officers.  (*Id.* at ¶ 6.)  According to SA Brown, the "notebooks were seized pursuant to a consensual vehicle search during a shooting investigation outside of Feng's internet gaming business."  (*Id.*)  SA Brown also avers that he "did not consider the materials that [he] received from local law enforcement in the determination to open the investigation."  (*Id.*)

On December 10, 2019, SA Brown interviewed Mr. Feng, who stated that he had business bank accounts with Bank of America and Chase Bank.[3]  (*Id.* ¶ 8.)  SA Brown also declared that he issued administrative summonses to Mr. Feng, as well as Bank of America, Regions Bank, and Brookline, and provided notice to Mr. Feng of the administrative summonses to the banking institutions. (*Id.* at ¶¶ 9-21.)  SA Brown also stated that he took all administrative steps required by the Internal Revenue Code in issuing the summonses, that it was "necessary to obtain the records and documents sought by the summonses in order to determine Dong Feng's potential criminal tax liability for tax years 2014-2018," and that the IRS was not in possession of the records requested in the summonses before they were issued.  (*Id.* at ¶¶ 22, 23.)

SA Brown also asserted that on December 17, 2019, Mr. Feng's former attorney, Brad Shriver, alleged that "the composition notebooks were unlawfully

---

[3] According to Mr. Feng's Affidavit, during the December 10, 2019 meeting, SA Brown showed Mr. Feng "what he claimed to be a page out of a notebook, which he represented to be from . . . the backpack[,] which was seized on August 12, 2018." (Doc. 7-4 at 2.)  Mr. Feng also claims that SA Brown informed him that "he was conducting a criminal investigation of [Mr. Feng], based off the contents of his notebook."  (*Id.*)

seized and requested they be returned to his client." (*Id.* ¶ 23.)  He also asserted

that on December 19, 2019, Mr. Shriver provided over 1,000 pages of documents

in response to the December 10, 2019 summons issued to Mr. Feng.  (*Id.* at ¶

25.)  SA Brown stated that he "scanned the documents and reviewed the first

page of the packets in order to determine the nature of the documents" received.

(*Id.*)  He also stated that the "records are currently in the possession of [his]

supervisor and will be until this matter is resolved."  (*Id.*)  According to SA Brown,

none of the financial institutions had produced records in response to the

summonses and the IRS had not "referred the investigation to the Department of

Justice for prosecution."  (*Id.* at ¶¶ 26-27.)

## II.    Parties' Submissions & Arguments

On December 27, 2019, Petitioners[4] initiated this action by filing a Petition

to Quash Summonses, pursuant to 26 U.S.C. § 7609(b),[5]  which they refiled on

December 30, 2019 to reflect the correct case number.  (Docs. 1 & 3.)  In the

Petition to Quash, Petitioners initially requested that the summonses issued by

---

[4] The Petitioners are Don Feng, an individual taxpayer, and corporations owned, in whole or in part, by Mr. Feng, including Dan Dong, LLC, Twins Feng, LLC, Lucas Feng Shi, Inc., Lucas Feng, LLC, Kenny Feng, Inc., Asian Game, Inc., New Brother Place, Inc., and K. Feng, LLC.  (Doc. 3 at 1.)

[5] "[P]ursuant to 26 U.S.C. § 7609, a taxpayer has 20 days after notice of the summons to 1) file a petition to quash the summons and 2) serve the IRS Special Agent and the person summoned with a copy of the Petition by certified or registered mail." *Maggert v. United States*, Case No. 6:06-mc-16-Orl-19DAB, 2007 WL 656459, at *3 (M.D. Fla. Feb. 28, 2007) (citation omitted).  A taxpayer must also "serve the United States in accordance with the Federal Rules of Civil Procedure."  (*Id.*)

SA Brown to Dong Feng, Brookline Bank, Regions Bank, and Bank of America be quashed.  (*Id.* at 1-2.)  Petitioners attached copies of the summonses to the Petition showing that, on December 10, 2019, SA Brown issued and served a summons on Mr. Feng, requesting his appearance and production of records, for tax years 2014 to 2018, on December 20, 2019.  (Doc. 3 at 2; Doc. 3-1 at 2-3.)  On December 12, 2019, SA Brown also served the third-party summonses on Brookline Bank, Regions Bank, and Bank of America, requiring an appearance and production of records for the period of "January 1, 2014 to present," on January 15, 2020.[6]  (Doc. 3 at 2; Doc. 3-2 at 2-26.)  According to Petitioners, the summonses indicated that "Mr. Feng is the subject of an IRS 'Criminal Investigation.'"  (Doc. 3 at 2.)

According to Petitioners, Brookline Bank, Regions Bank, and Bank of America qualify as third-party record keepers under 26 U.S.C. § 7609(a)(3)(A), and, Mr. Feng, as noticee, "has a right to intervene and begin a proceeding to quash such summonses," pursuant to 26 U.S.C. § 7609(b).  (*Id.* at 3.)  Petitioners also asserted that Mr. Feng had standing to request that the Court quash the summons served on him.  (*Id.*)

---

[6] Petitioners allege that this Court has jurisdiction to hear their Petition because "each of the individuals and/or entities sought to be summoned either reside in the Middle District of Florida and/or have branch offices located in the Middle District of Florida (that is, [the City of] Jacksonville [or] Duval, Clay and/or St. Johns Counties, Florida), where the taxpayer conducted his business."  (Doc. 3 at 2.)

In the Petition, Petitioners also provided the following grounds for quashing the summonses: (1) the third-party summonses were issued "as part of an unlawful and bad faith attempt by the IRS to use its summons power to improperly gather evidence for a criminal prosecution"; (2) Respondent failed to follow the administrative steps required by the Internal Revenue Code, including the failure to fill out the "Notice" form attached to the third-party summonses; (3) the summonses are an abuse of process as they "rely on illegally[-]acquired evidence upon which to base this investigation and issuance of summonses"; (4) Mr. Feng's Fourth Amendment rights were violated through an illegal search and seizure of his records and the "illegally seized records are now in the possession of [the] IRS, and have been used to open a criminal tax investigation, and issue the summonses, all of which are the product of the unlawful search and seizure, and thus are similarly tainted"; and (5) the summonses "are believed to be tainted by unauthorized disclosures, in violation of" 26 U.S.C. §§ 6103, 7431(c), and Rule 6(e) of the Federal Rules of Criminal Procedure.  (*Id.* at 3-4.)

Moreover, Petitioners also argued that, at a hearing in this matter, they would be able to demonstrate that Respondents failed to meet the "four-pronged test for judicial enforcement" pursuant to *United States v. Powell*, 379 U.S. 48, 57-58 (1964), discussed *infra*.  (*Id.* at 4.)  Specifically, Petitioners argued that Respondent failed to meet the *Powell* factors as "the IRS investigation of Mr. Feng is not being conducted pursuant to a legitimate purpose and/or said investigation is the product of and derived from an illegal search and seizure of

8

Mr. Feng's records"; the third party summonses were issued in violation of 26 U.S.C. § 7602(c); and the administrative steps required by the Internal Revenue Code were not properly followed. (*Id.* at 4.) Petitioners initially requested an evidentiary hearing but stated that they had "not yet determined the extent of their discovery needs." (*Id.* at 5.)

In response to the Petition, Respondent filed its Motion to Dismiss, asking the Court to dismiss the Petition in its entirety. (Doc. 4.) Respondent first argues that the Court lacks subject matter jurisdiction over the summons issued to Mr. Feng and claims that "only a person entitled to notice of a summons under 26 U.S.C. § 7609(a) may bring a proceeding to quash the summons" and "[t]his section does not apply to a summons 'served on the person with respect to whose liability the summons is issued.'" (*Id.* at 3 (quoting 26 U.S.C. § 7609(c)(2)(A)).). (*Id.* at 1.) Next, Respondent argues that the Court also does not have subject matter jurisdiction to quash the summons issued to Brookline Bank. (*Id.* at 4.) According to Respondent, pursuant to 26 U.S.C. § 7609(h)(1), "[t]he district in which the summoned person 'resides or is found' has jurisdiction to entertain an otherwise proper petition to quash" and "[t]his means that the summoned party must have a physical presence within the district." (*Id.*) Respondent argues that Brookline Bank is headquartered in Massachusetts and "has no branches or physical presence," known to Respondent, within this District, or even within the state of Florida. (*Id.*) Therefore, Respondent requests

that the Petition to Quash with respect to Brookline Bank be dismissed for lack of jurisdiction.[7]  (*Id.*)

With respect to the Bank of America and Regions Bank summonses, Respondent argues that they were issued in good faith and that the Declaration of SA Brown establishes Respondent's *prima facie* showing under *Powell*; that Petitioners failed to establish a defect in the summonses (*i.e.*, the summonses were issued for a proper purpose, the administrative requirement of 26 U.S.C. § 7609(a)(1) were followed by SA Brown, and enforcement of the summonses would not be an abuse of process); there were no unlawful disclosures; and an evidentiary hearing and discovery are not appropriate in this case.  (Doc. 4 at 7-16.)

In the Response to the Motion, Petitioners contend that the Court has subject matter jurisdiction over the summons issued to Brookline Bank because it has a physical presence in this District through ATMs operated by SUM, an affiliate.  (Doc. 7 at 2.)  Petitioners contend that Brookline Bank's website "lists its 'Locations' as 'ATM Locations,'" and "the ATM Locations include all locations in which ATMs operated by SUM, NYCE, MasterCard and Cirus [sic] operate."  (*Id.*)  Therefore, since SUM claims to have multiple ATMs in downtown Jacksonville, "Brookline Bank has 'Locations' and thus can be 'found' in Jacksonville, Florida,"

---

[7] Respondent concedes that the Court has jurisdiction over the Petition to Quash the summonses issued to Bank of America and Regions Bank, pursuant to 26 U.S.C. §§ 7402, 7604(a) and 28 U.S.C. §§ 1340, 1345, "because both have branches in the Middle District of Florida" and may be found in this District.  (Doc. 4 at 4.)

within this District.  (*Id.*)  However, Petitioners conceded that Mr. Feng, as the subject of the investigation, has no standing pursuant to 26 U.S.C. § 7609 to move to quash the summons issued to him and have withdrawn "that part of the Petition applicable to the summons directed to Mr. Feng."  (*Id.* at 2.)

Next, Petitioners argue that the IRS investigation, and the resulting summonses, are "the product of and derived from an illegal search and seizure of Mr. Feng's records (notebooks)."  (*Id.* at 6.)  Petitioners assert that the IRS's possession of the notebooks 13 months before issuing the summonses, and the chronology of events including the transfer of the notebooks by Bradford County authorities to the IRS while the civil action for the return of said property was pending," demonstrates Respondent's bad faith and an inference of improper motive.  (*Id.* at 6-7.)  Petitioners claim that the IRS issued the summonses "in reliance on the unlawfully seized notebooks."  (*Id.* at 8)  Petitioners also argue that "the evidence is overwhelming that Mr. Feng's backpack was unlawfully seized from him" and, as the "silver platter" doctrine allowing federal prosecutors to use evidence illegally gathered by state police has been abrogated, the "IRS cannot use this illegally acquired evidence to conduct their investigation or issue summonses—without transgressing the bad faith and improper motive line."  (*Id.* at 14-15.)  The Petitioners contend that "[t]he Fourth Amendment rights of Mr. Feng, and his companies, were violated through an illegal search and seizure of his records.  Those illegally seized records are now in possession of [the] IRS, and have been used to open and/or continue a criminal tax investigation, and

11

more to the point, issue the summonses, all of which are the product of the
unlawful search and seizure, and thus are similarly tainted." (*Id.* at 15 (citation
omitted).)   Petitioners contend that Mr. Feng was coerced into signing the
"consent" form, therefore his consent to the search was not voluntary. (*Id.* at 15-
16.)  Petitioners also challenge Respondent's objection to discovery and claim
that their discovery requests are relevant and proper. (*Id.* at 18-23.)   Petitioners
also concede various issues in their Response, thus, rendering them moot.[8]

In its Reply, Respondent asserts, in part, that Petitioners have not
demonstrated that enforcing the summonses would be an abuse of the Court's
process or that the IRS acted "in bad faith when it issued the summonses." (Doc.
11 at 1.)  Respondent asserts that the consensual search by local law
enforcement was not unlawful and that no court has determined the search was
illegal. (*Id.* at 6-7.)  With respect to Petitioners' argument that the exclusionary
rule would invalidate the summonses, Respondent argues that the courts have

---

[8] With respect to their argument regarding unlawful disclosures, Petitioners
accept the representations of the Respondent that there have been no unlawful
disclosures, unless and until the accuracy of this claim is called into question by
discovery. (Doc. 7 at 18.)  Petitioners also withdraw their notice challenge to the
summonses. (*Id.* at 23 ("On further examination, counsel believes the response of the
government to this issue . . . has merit, and thus counsel withdraws this aspect of his
challenge to the summonses.").)  Petitioners also state that they "are somewhat in
agreement with the government, but, of course, for a different reason," that there is no
need for an evidentiary hearing. (*Id.*)  Petitioners assert that the Court has been
provided with sufficient evidentiary material to make its decision and deny Respondent's
Motion "without the need for an evidentiary hearing, and allow the parties to proceed
with" discovery. (*Id.* at 23-24; *see also id.* at 6.)  Therefore, these issues are moot and
will not be discussed in detail below.

determined that quashing a summons in light of a Fourth Amendment violation is only proper "when doing so would deter future potential unconstitutional conduct by IRS personnel because those IRS personnel took part in the initial unlawful conduct." (*Id.* at 1.)  Even if the search was unlawful, Respondent argues that since the IRS was not involved in the purported wrongful conduct, this "cannot form the basis for quashing the petitions" as it would not serve to deter future wrongful conduct by the IRS.  (*Id.* at 1-2.)  Respondent also argues that, even assuming the search was unlawful, "the taint is so attenuated that it is not grounds for quashing the summonses under Fourth Amendment principles." (*Id.* at 7-9.)  Additionally, Respondent argues that under the independent source doctrine, the summonses cannot be quashed where their issuance can be traced to information SA Brown obtained from an independent source, (*i.e.*, information obtained from the IRS's analytical tool along with Mr. Feng's tax returns and public records), and "not the purportedly illegal search." (*Id.* at 9.)

### III.   Standard & Applicable Law

The Eleventh Circuit has made the following observations with respect to IRS summonses:

> To ensure compliance with the tax code, Congress designed a system that gives the IRS broad statutory authority to summon a taxpayer to produce documents or give testimony relevant to determining tax liability.
>
> Section 7602 of the Internal Revenue Code is the centerpiece of that congressional design.  Under § 7602, the IRS may inquire into the correctness of a return by examin[ing] any books, papers, records, or other data.  . . .  This summons power is not limited to examining

documents of the taxpayer under investigation but also extends to allow the IRS to obtain relevant information from a third party.  But where, as here, the IRS issues a summons to a third-party recordkeeper to gather information about a taxpayer, the IRS must notify the taxpayer of the summons pursuant to 26 U.S.C. § 7609(a).  To guard against potential abuses of this broad power, the courts—and not the IRS—are authorized to enforce this summons power.

*Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018) (citations and quotations omitted).  The Eleventh Circuit also recognized that in *Powell*, the Supreme Court established the following analytical framework governing the courts' decisions regarding the enforceability of IRS summonses:

First, for the government to establish a prima facie case for enforcement, it must demonstrate that (1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that purpose, (3) the IRS does not already possess the documents sought, and (4) the IRS has followed the procedural steps required by the tax code.  If the government satisfies *Powell*, the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be an abuse of the court's process.  But significantly, a court's review is narrowly circumscribed.  A court may inquire as to only whether the IRS issued a summons in good faith, and must eschew any broader role of oversee[ing] the [IRS's] determinations to investigate.

*Presley*, 895 F.3d at 1288-89 (11th Cir. 2018) (citations and quotations omitted).

"The IRS'[s] burden in meeting the *Powell* factors is minimal, and the IRS can satisfy [its] burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts."  *Lefkoff, Duncan, Grimes, McSwain & Hass, PC v. United States*, Case No. 6:17-mc-5-Orl-41TBS, 2017 WL 9398653, at *3 (M.D. Fla. Apr. 4, 2017) (citations and quotations omitted) (report and recommendation adopted by 2017 WL 2859642 (M.D. Fla. July 5, 2017)).

14

"The burden on the party contesting the summons is a heavy one requiring the allegation of specific facts and introduction of evidence." *Id.* (citations and quotations omitted). "Where the government is not seeking to enforce a summons, but rather challenge a petition to quash, the analysis is the same." *Id.*

The Supreme Court has also instructed as follows with respect to whether discovery or an evidentiary hearing are warranted when a taxpayer challenges an IRS summons:

> [W]e have also emphasized that summons enforcement proceedings are to be summary in nature. . . .
>
> As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden . . . . And although [a] bare assertion or conjecture is not enough, neither is a fleshed[-]out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing.

*United States v. Clarke*, 573 U.S. 248, 254-55 (2014).

## IV.    Analysis

As an initial matter, the undersigned recommends that the Court does not have subject matter jurisdiction over the Petition to Quash the summonses issued to Mr. Feng and Brookline Bank. In response to Respondent's arguments, Petitioners conceded that Mr. Feng, as the subject of the investigation, has no standing pursuant to 26 U.S.C. § 7609 to move to quash

the summons issued to him, and have withdrawn their argument.  (Doc. 7 at 2.)

Therefore, the undersigned recommends that Respondent's Motion to Dismiss as

to Mr. Feng's summons be granted, and the Petition to Quash Mr. Feng's

summons be denied as moot.

The undersigned also recommends that the Petition be dismissed with

respect to Brookline Bank, a financial institution with its headquarters in

Massachusetts.  Pursuant to 26 U.S.C. § 7609(h), "[t]he United States district

court for the district within which the person to be summons resides or is found

shall have jurisdiction to hear and determine any proceeding brought under

subsection (b)(2), (f), or (g).[9]  When the "third[-]party recordkeepers are not

located in the district where the petition to quash has been filed[,] the court does

not have subject matter jurisdiction over the summonses."  *United States v.

Arnold*, No. 5:99-cv-161-Oc-21GRJ, 2001 WL 933549, at *1 (M.D. Fla. July 5,

2001) (footnote omitted).

Although Petitioners argue that this Court has jurisdiction over Brookline

Bank because its website "lists its 'Locations' as 'ATM Locations,'" "the ATM

Locations include all locations in which ATMs operated by SUM, NYCE,

MasterCard and Cirus [sic] operate," and "the official website for SUM confirms

multiple locations in the downtown Jacksonville area," this strained argument is

unavailing.  *See Cayman Nat. Bank, Ltd. v. United States*, Case No. 8:06-mc-50-

---

[9] Section 7609(b)(2) addresses proceedings to quash an IRS summons.

T-24 MAP, 2007 WL 641176, at *3 (M.D. Fla. Feb. 26, 2007) ("While there is not a lot of case law regarding what constitutes being 'found' within a district, this Court finds persuasive those cases that have addressed the issue and have required the actual physical presence of the summoned party within the district in order for the summoned party to be considered 'found' within the district."). Here, Brookline Bank is neither found nor physically present in this District and Petitioners have made an insufficient showing to the contrary. As such, the Court lacks subject matter jurisdiction over this summons. Therefore, the undersigned recommends that Respondent's Motion to Dismiss as to the summons issued to Brookline Bank be granted, and the Petition to Quash this summons be denied.

As the only remaining issues before the Court pertain to the summonses issued to Bank of America and Regions Bank, the following analysis will be limited to those two summonses.

### A.    Evidentiary Hearing and Discovery

First, the undersigned notes that Petitioners and Respondent agree that there is no need for an evidentiary hearing, albeit for different reasons. Nevertheless, the undersigned also recommends that Petitioners are not entitled to an evidentiary hearing or discovery because their "assertions of bad faith do not rise above the conclusory allegations and do not sufficiently controvert the government's evidence of proper purpose for the issuance of the summons in

this case."  *See Schwartz v. United States*, Case No. 14-62609, 2015 WL 4104610, at *2 (S.D. Fla. May 26, 2015).

"A taxpayer is entitled to examine the relevant IRS officials regarding the issuance of a summons 'when he points to specific facts or circumstances plausibly raising an inference of bad faith,' but is not entitled to do so if the taxpayer merely offers 'a bare allegation of improper purpose.'"  *Schwartz*, 2015 WL 4104610, at *2 (quoting *Clarke*, 573 U.S. 249).  Although a "fleshed[-]out case" is not required, a taxpayer must "make a showing of facts that give rise to a plausible inference of improper motive."  *Id.* (quoting *Clarke* at 254) (internal quotation marks omitted).

Here, Petitioners' allegations are not sufficient to raise a plausible inference that the summonses were issued in bad faith or for an improper purpose.  Petitioners' allegations of wrongdoing regarding the search and seizure of Mr. Feng's notebooks are limited to the actions of Bradford County law enforcement officers, not the IRS or SA Brown.  Even assuming Petitioners' assertions that Mr. Feng's notebooks were obtained pursuant to an unlawful search by local law enforcement are true, that does not mean the IRS does not have a legitimate purpose in issuing the summonses.  Here, the Declaration of SA Brown asserts that, based on a tip from local law enforcement that Mr. Feng was running an illegal gambling operation, SA Brown used an IRS tool to evaluate Mr. Feng as a potential lead for further investigation.  (Doc. 4-1 at 1-2.) The IRS tool identified a number of items SA Brown considered to be red flags

18

and revealed that Mr. Feng had business relationships with several financial institutions, including Bank of America, Regions Bank, and Brookline Bank.  (*Id.* at 1.)  SA Brown also reviewed Mr. Feng's tax returns which contained "clear errors and possible fraud."  (*Id.* at 2.)  Based on information from Mr. Feng's tax returns, SA Brown also reviewed public property records for a number of Mr. Feng's rental properties which he purchased "with considerable down payments." (*Id.*)  SA Brown found these down payments to be larger than what he had expected "[b]ased on the income historically claimed by" Mr. Feng on his tax returns.  (*Id.*)

Based on this independent information, and before receiving the notebooks from local law enforcement, on November 15, 2018, SA Brown recommended that the IRS initiate a criminal investigation into Mr. Feng's compliance with tax laws, which his supervisor approved on November 20, 2018. (*See* Docs. 4-1 at 2, 11 at 6.)  On November 28, 2018, SA Brown received the notebooks from Bradford County law enforcement officers, yet SA Brown did not issue the summonses at issue until more than a year later.  While Petitioners claim that the IRS's possession of the notebooks for over 13 months before issuing the summonses points to bad faith and improper motive, this argument is tenuous at best and tends to support the opposite inference: that the IRS summons were not issued as a result of the IRS's receipt of the notebooks.

As SA Brown's Declaration states, the purpose of the IRS summons was to determine the Petitioners' potential federal income tax liability, which is a

19

legitimate purpose. SA Brown determined that Mr. Feng was a potential lead for further criminal investigation based on information he obtained from an IRS analytical tool, a review of Mr. Feng's tax returns, and a review of public property records regarding Mr. Feng's rental properties. This does not raise an inference of bad faith or improper motive and Petitioners' have not made a sufficient showing to the contrary. *See United States v. Clarke*, 816 F.3d 1310, 1318 (11th Cir. 2016) ("Appellants' submissions raise many allegations, but no plausible inference of improper motive. First, the submission that the timeline of the issuance of the summonses supports an inference of retaliation by the IRS requires substantial conjecture that is both implausible and unsupported by the record. Further, none of the Appellants' submissions suggest that the summonses were issued in bad faith anticipation of tax court proceedings rather than in furtherance of Agent Fierfelder's investigation. As conjecture and bare allegations of improper purpose are insufficient as a matter of law, we conclude that Appellants failed to meet their burden under *Clarke* and the district court did not abuse its discretion denying Appellants' request for an evidentiary hearing."). Thus, neither an evidentiary hearing nor discovery are warranted here.

### B. *Powell* Requirements

Here, Respondent has met its burden of establishing compliance with the *Powell* factors. As established by SA Brown's Declaration, the summonses were issued for a legitimate purpose, the information summoned is relevant to that purpose, the IRS does not already have the documents sought through the

20

summonses, and SA Brown followed the procedural steps and administrative requirements of the Internal Revenue Code in issuing the summonses. As the IRS's burden in meeting these *Powell* factors is minimal, which it can satisfy "merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts," as has been done here through SA Brown's Declaration, the undersigned recommends that Respondent has met its burden under *Powell*.

Accordingly, the burden now shifts to Petitioners to either disprove one of the *Powell* factors or demonstrate that judicial enforcement of the summonses would be an abuse of the Court's process. First, Petitioners do not argue that the information sought by Respondent is already in its possession, or that the summonses are procedurally defective as Petitioners have withdrawn their notice arguments. Petitioners also do not specifically allege that the records sought in the summonses are not relevant to the IRS investigation. Thus, the only remaining issues are whether Petitioners have met their burden of (1) disproving the first *Powell* factor, *i.e.*, whether the summonses and investigation have a legitimate purpose, or (2) showing that enforcement of the summonses would be an abuse of process.

### 1.     *Legitimate Purpose*

Petitioners have not met their burden of disproving the first *Powell* factor, namely that the summonses were issued for a legitimate purpose. Here, Respondent has established that the purpose of its investigation, and issuance of the summonses, was to determine the potential criminal tax liability of Mr. Feng,

which is a legitimate purpose.  *See* 26 U.S.C. § 7602(b) ("The purposes for which the Secretary may [issue a summons] include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.").  Moreover, "the IRS may issue summonses 'solely for a criminal tax purpose as long as the IRS has not referred the tax case to the Department of Justice for criminal prosecution.'"  *United States v. Barry*, Case No. 2:08-cr-56-FtM-29SPC, 2009 WL 603623, at *3 (M.D. Fla. Mar. 9, 2009) (quoting *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 682 (11th Cir. 1984)).  Here, SA Brown declared that the matter had not been referred to the Department of Justice, therefore, the issuance of the summonses was proper.

To the extent Petitioners contend that the IRS summonses were issued for an improper purpose and in bad faith because they were allegedly based on evidence obtained in violation of Mr. Feng's Fourth Amendment rights, these arguments are unavailing.  First, Petitioners have not established that the confiscation of Mr. Feng's notebook by Bradford County law enforcement officers was incident to an unlawful search and seizure.  While Petitioners presented evidence that Mr. Feng brought a claim for the return of his property based on an alleged involuntary consent to the search, the evidence submitted shows that the parties settled the civil claim in state court and the case was dismissed without a ruling on the merits.  (*See* Doc. 7-3.)  While Petitioners submitted various statements from purported witnesses regarding the alleged unlawful search,

Respondent's challenges to the conclusory and speculative allegations made in those submissions are well-taken.

Nevertheless, even if the notebooks were unlawfully seized, the Fourth Amendment's exclusionary rule does not render the summonses unenforceable. First, even if the exclusionary rule applied, evidence may not be excluded when it is obtained based on information acquired independent of the tainted source. *Murray v. United States*, 487 U.S. 533, 573 (1988). Here, SA Brown has established that the investigation was initiated, and summonses were issued, based on information he obtained from the IRS analytical tool, based on a review of Mr. Feng's tax records, and a review of public property records. (Doc. 4-2.) The IRS also knew about the banks from these independent sources before SA Brown received the notebooks from Bradford County law enforcement. (Doc. 4 at 13; Doc. 4-2 at 1.) Thus, as Respondent argues, the IRS gathered this information and opened its investigation before it even obtained the notebooks, basing the issuance of the summonses on information obtained independent of the notebooks. *See Lefkoff*, 2017 WL 9398653, at *3 ("The IRS'[s] investigative authority does not depend on an actual case or controversy, but rather 'it can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'") (quoting *Powell*, 379 U.S. at 57). Also, while Petitioners attempt to show that the only reason for the issuance of the summonses was Mr. Feng's notebooks, as alluded to in his former counsel's

affidavit (Doc. 7-1), these circumstantial inferences, particularly in light of SA Brown's Declaration, are speculative at best.

Moreover, even assuming that the notebooks were unlawfully obtained by Bradford County local law enforcement, quashing the summonses would only be an appropriate remedy where the unlawful search or conduct was performed by an IRS agent.  *See United States v. Beacon Fed. Sav. & Loan*, 718 F.2d 49, 53-54 (2d Cir. 1983) ("'[T]he Supreme Court has made it plain that the principal, if not the only, justification for excluding illegally seized evidence from governmental proceedings is to deter future governmental conduct.'  . . .  Such deterrence would be promoted by denying enforcement to an IRS summons *if it resulted from an agent's unconstitutional search*.") (emphasis added) (quoting *Tirado v. Comm'r of Internal Revenue*, 689 F.2d 307, 309 (2d Cir. 1982)); *see also United States v. Janis*, 428 U.S. 433, 454, 459 (1976) ("[E]xclusion from federal civil proceedings of evidence unlawfully seized by a state criminal law enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion.  . . .  We therefore hold that the judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign.").  Here, Petitioners allege that the unlawful search and wrongful conduct was attributed to the actions of the Bradford County authorities, not SA Brown or the IRS.  Therefore, even assuming the exclusionary rule

applied, quashing the summonses would not be an appropriate remedy as it would not serve to deter any future unconstitutional government conduct.

### 2.    Abuse of Process

To the extent Petitioners claim that enforcement of the summonses would be an abuse of process because they were issued based on evidence purportedly obtained unlawfully, as discussed *supra*, these arguments also fail. "A [c]ourt's enforcement of the summons constitutes an abuse of process 'if the summons had been issued with an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *Schwartz*, at *2 (quoting *Powell*, 379 U.S. at 58).  The burden is on the taxpayer to establish an abuse of process.  *Id.*  Here, Petitioners have failed to meet their burden of showing an improper purpose or bad faith by the Respondent.  Instead, they rely on the argument that the exclusionary rule renders the summonses unenforceable.  However, for the reasons discussed above, these arguments are insufficient to establish that enforcement of the summonses would be an abuse of process.

### V.    Conclusion

For the reasons discussed herein, the undersigned recommends that Petitioners failed to show that they are entitled to discovery and/or an evidentiary hearing.  The undersigned further recommends that Respondent has made a sufficient showing that it complied with the *Powell* factors, while Petitioners have

25

failed to meet their burden of disproving Respondent's compliance with one of the four *Powell* factors, or to show that enforcement of the summonses would constitute an abuse of the Court's process.

Therefore, it is respectfully **RECOMMENDED** that:

1.      The Motion to Dismiss (**Doc. 4**) be **GRANTED**.

2.      The Petition to Quash (**Doc. 3**) be **DENIED**.

3.      The Clerk of Court be **DIRECTED** to terminate any pending motions and close the case.

**DONE AND ENTERED** in Jacksonville, Florida, on December 11, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record